# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOYCE SPEARS**                                                     **CIVIL ACTION**

**VERSUS**

**STATE OF LOUISIANA AND**
**LOUISIANA COMMISSION ON**                          **NO. 09-905-BAJ-M2**
**LAW ENFORCEMENT**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, January 20, 2011.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOYCE SPEARS**                                                      **CIVIL ACTION**

**VERSUS**

**STATE OF LOUISIANA AND**
**LOUISIANA COMMISSION ON**                             **NO. 09-905-BAJ-M2**
**LAW ENFORCEMENT**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Summary Judgment (R. Doc. 17) filed by the defendant, State of Louisiana, Commission on Law Enforcement and Administration of Criminal Justice ("LCLE"). The plaintiff, Joyce Spears ("Spears"), has filed an opposition (R. Doc. 23) to LCLE's motion, in response to which LCLE has filed a reply memorandum (R. Doc. 26).

## FACTS & PROCEDURAL BACKGROUND

Spears, an African American female, has been employed by the State of Louisiana for approximately thirty (30) years. She began work with the State as a stenographer and was promoted several times. *See*, Spears' deposition, Plaintiff's Exhibit #1, p. 11. Her promotion from secretary to Information Technology Officer ("ILTO") was the result of a detail since she did not possess the minimum requirements to hold an ILTO position. *See*, LCLE's Exhibit B, Affidavit of Judy Whitmire, ¶4. Spears has a high school degree but has never earned a college degree. *See*, Spears' deposition, p. 11. In 2003, she was promoted to an ILTO 2 position. *Id.*, pp. 54-55. In that position, she has worked

exclusively in the Uniform Crime Reporting Division of the LCLE ("UCR"). *See*, LCLE Exhibit "C," Affidavit of Robert Mehrtens, ¶7.

LCLE is responsible for compiling and reporting crime statistics from law enforcement agencies across Louisiana to the FBI. *Id.*, ¶5. The entity is in the process of transitioning from a manual, paper-based crime reporting format to a web-based electronic crime reporting system. *Id.*, ¶6. Under the manual-based reporting system, ITLO employees, like Spears, receive crime reports from state law enforcement agencies by mail, quality check them for accuracy, make copies of them, and mail the originals to the FBI. *Id.*, ¶8. Other LCLE ITLO employees compile and report crime statistics using web-based electronic reporting systems, which collect, compile, and submit crime statistics electronically to the FBI. *Id.,* ¶10.

In 2006, Spears and a co-employee, Doug Wright, a white male, requested reallocation and an upgrade of their positions from ITLO 2 to ITLO 3. *See*, Complaint, ¶5; LCLE Exhibit "D," Deposition of Doublas Wright, pp. 68-70; LCLE Exhibit "E, " Mehrtens deposition, p. 35. Non-LCLE, Civil Service employees conducted an audit of the ITLO 2 position and determined that ITLO 3 was not the proper allocation for the job tasks performed by Spears and other ITLO 2 employees and, additionally, that the ITLO 2 position should be downgraded to data entry specialists. *Id.*, pp. 35-36. Spears' supervisors, however, requested that the ITLO 2 position not be downgraded, and Civil Service agreed. *Id.*, p. 36. However, Spears and Wright were denied their request for an upward reclassification to ITLO 3. Spears filed an appeal, but the Civil Service denied her appeal and affirmed her ILTO 2 classification. *See*, LCLE Exhibit "A," Spears' deposition, pp. 57-58; LCLE Exhibit "C," Affidavit of Mehrtens, ¶11. In December 2008, LCLE

management petitioned Civil Service to reclassify ITLO 2 to ITLO 3, but that request was again denied.  *See*, Spears' deposition, pp. 60-61.

According to plaintiff, in January 2008, she was informed that Joel Taylor ("Taylor"), a white male, was to assume the same job responsibilities as she had.  *Id.*, pp. 61-63.[1] She contends, however, that she also found out that he was being paid on a higher pay scale than she was.  *Id.*  She alleges (and testified during her deposition) that, as a result, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging equal pay discrimination.  *Id.*  Neither party has submitted a copy of that EEOC charge to the Court for consideration; however, plaintiff has produced a copy of a letter from the EEOC to LCLE dated August 12, 2008, indicating that Spears had filed a charge against LCLE under Title VII.  *See*, Plaintiff's Exhibit # 2.

In October 2008, Spears applied for an ILTO 3 position, which was open to applicants at all levels (ITLO 1-4) as a probationary position.  *See*, Complaint, ¶7; Spears' deposition, p. 123.  Spears and approximately ten (10) other applicants were interviewed. *See*, LCLE Exhibit "E," Mehrtens deposition, p. 44.  Sherro Haynes ("Haynes"), a black female, was selected for the position.  *See*, LCLE Exhibit "C," Mehrtens affidavit, ¶18; LCLE Exhibit "F," Deposition of Barbara Garcia, p. 28.  According to evidence submitted by LCLE, Haynes possesses a college degree in computer engineering/science, has vast experience with software development and Help Desk abilities, and possesses skills that

---

[1] Although Taylor has a different job title (Criminal Justice Policy Advisor 3) from Spears (who is an ILTO 2), Spears contends that he has the exact same job responsibilities and that he is paid on a different pay scale.  *Id.*, p. 62.

would enable the LCLE to transition its crime reporting from a PC-related database system to a web-based system. *Id.*, p. 28; LCLE Exhibit "E," Deposition of Mehrtens, pp. 44-45, 51.

On November 17, 2008, Spears filed an EEOC complaint alleging discrimination based upon race, color, and sex as well as retaliation. *See*, Plaintiff's Exhibit #4. Specifically, she asserted that LCLE's failed attempt to have her ITLO 2 position upwardly reclassified to ITLO 3 and LCLE's failure to promote her to the ITLO 3 position were the result of discrimination and retaliation for having previously filed an EEOC charge in August 2008. *Id.*

In February 2009, LCLE reprimanded Spears for insubordination for having reported a hate crime to the FBI that the East Baton Rouge Parish Sheriff's Department had not so designated; however, she received no formal discipline in relation to the incident. *See*, Spears' deposition, pp. 86-87; 93-99; LCLE Exhibit "E," Mehrtens deposition, p. 286; LCLE Exhibit "G," Affidavit of Tommy Cole. According to Spears, also in February 2009, her supervisor, Fredia Dunn, told her to stop writing her EEOC complaints because the LCLE would begin to look at it as a form of retaliation against them, that the LCLE would use it to build a case against Spears, and that they would consider it a use of the agency's resources and fire her. Spears contends Ms. Dunn told her to quit "while she is ahead." *See*, Spears' deposition, pp. 81-83. Spears further asserts that, with respect to Spears' son who planned to go to college, Ms. Dunn threatened to "set [him] up on a charge." *Id.*, p. 83. Finally, Spears testified that Ms. Dunn told her LCLE had connections with all disciplinary boards and investigatory commissions and that all complaints against LCLE would therefore be futile. *Id.*, pp. 83-84; Plaintiff's Exhibit # 6.

4

In March 2009, an ITLO supervisor position became available.  Forty (40) candidates, who possessed the minimum qualifications for the position and would not have to be detailed, applied for the position.  *See*, LCLE Exhibit "B," Affidavit of Judy Whitmire, ¶5.  According to a memorandum dated March 2, 2009, six (6) applicants were interviewed for that position, and the interview process produced a unanimous decision as to the top two (2) candidates for the position.  The interview panel's "top choice" was Anthony Myles ("Myles").  According to the memorandum, he had the quality of experience needed for the position, including experience as a computer programmer, in software development, and in network troubleshooting.  *See*, LCLE Exhibit "C(4)."  Myles also had a college degree in computer information systems.  *See*, LCLE Exhibit "C(5)."  The LCLE interview panel recommended to Civil Service that Myles, a black male, be hired.  *See*, LCLE Exhibit "C," Affidavit of Mehrtens, ¶20.

Four (4) days after the issuance of the above memorandum, on March 6, 2009, Spears sent an email to another of her supervisors, Judy Dupuy ("Dupuy"), expressing her interest in the ITLO Supervisor position and requesting to be detailed into it since she did not possess the qualifications for that position.  *See*, LCLE Exhibit "C," Affidavit of Mehrtens, ¶19; Plaintiff's Exhibit #7.  On that same date, Ms. Dupuy informed Spears that several applicants had interviewed for the ITLO Supervisor position and that a job offer had been made.  *Id.*  Spears, however, contends that, despite Ms. Dupuy's representation in that March 6, 2009 email, she saw Myles in the office on that date, and he advised that he "was not sure if he had the job or not, he had to wait and see . . ."  *See*, Plaintiff's Exhibit #8.

In May 2009, Spears applied for a Criminal Justice Policy Planner 1 position. *See*, Complaint ¶28, Spears' deposition, pp. 101-102. She contends that the LCLE never responded to let her know whether or not she was qualified for the position so she contacted the Civil Service department to find out and was told that she was qualified. *Id.*, p. 103. Spears alleges that, despite being qualified for the position and having her name placed on a list of eligible employees sent to the hiring manager, she was not interviewed for the position. *Id.*, p. 103-104; Complaint ¶29-30. The LCLE interview panel selected Scott Murrell ("Murrell"), a white male, for the position. *See*, LCLE Exhibit "H," Affidavit of , ¶5. According to evidence submitted by LCLE, Murrell holds a college degree, acquired many years of experience as a military police officer and as a team leader multiple times during active duty for the National Guard, and had extensive experience assisting the New Orleans Police Department with local law enforcement duties. *Id.*, ¶6. Such evidence further states that Murrell's "skills, qualifications, and great repoire with law enforcement agencies made him the best candidate to function as the liaison for all State Police academies, and perform numerous duties, a few of which include: administering all POST certification exams, processing certification status requests with Louisiana and other states, answering any and all curriculum questions, and assisting POST programs manager for any academy or instructor level trainings in the areas of firearms and corrections." *Id.*, ¶7.

When Spears did not receive promotions to the ITLO Supervisor position or the Criminal Justice Policy Planner I position, she filed another complaint with the EEOC on July 15, 2009, alleging that she was denied those positions in retaliation for having filed previous EEOC complaints and as a result of discrimination in violation of Title VII.

On October 20, 2009, Spears filed the present lawsuit, wherein she asserts: (1) that the LCLE discriminated against her due to her race, color, and gender by denying her job and/or promotion applications in favor of similarly situated employees outside of her protected class and less qualified than plaintiff; (2) that LCLE retaliated against her by eliminating training responsibilities she had had prior to her complaints to the EEOC, by investigating her on accusations related to her reporting of hate crimes to the FBI, and by isolating her from work-related activities; (3) that LCLE further retaliated against her by denying her the promotions and positions for which she applied in 2008 and 2009; and (4) that she was discriminated against due to her gender, pursuant to the Equal Pay Act, and her race, pursuant to 42 U.S.C. §§1981, 1983 and 2000e because LCLE knowingly allowed similarly situated white male employees to receive better compensation for performing the same job duties as plaintiff.

## **LAW & ANALYSIS**

### **I.      Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[2] Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential

_____

[2] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

to his/her claim will a genuine issue of material fact be found to exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[3]

## II.    Title VII and Section 1983 race, color, and gender discrimination claims:

As a preliminary matter, the undersigned notes that plaintiff's Section 1983 claims against the LCLE should be dismissed because LCLE is a state agency, and neither the state nor its agencies are "persons" subject to suit under Section 1983.  *Govea v. ATF*, 2006 WL 3147324 (5th Cir. 2006), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) and *Brandley v. Keeshan*, 64 F.3d 196, 200 (5th Cir. 1995).  Relative to plaintiff's Title VII claims, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. §2000e-2(a)(1).  Since Spears has not provided direct evidence of discrimination, her claims based upon circumstantial evidence are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *Taylor v. Seton Brackenridge Hosp.*, 2009 WL 3150256, **2 (5th Cir. 2009).

Spears must first establish a *prima facie* case of discrimination by establishing that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside her protected class, or in the case of a disparate treatment claim (like Spears' claims), other

---

[3] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law.  *Id.*

similarly situated employees were treated more favorably under similar circumstances. *Id.*, at **3, quoting *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Earle v. Aramark Corp.*, 2007 WL 2683821 (5th Cir. 2007). If Spears demonstrates a *prima facie* case, the burden of production (not persuasion) shifts to LCLE to articulate a legitimate, non-discriminatory reason for its challenged actions. *Pacovsky v. City of Booneville Mississippi,* 2009 WL 2972092, *1 (5th Cir. 2009). Finally, if LCLE meets its burden, Spears must then offer sufficient evidence to raise a genuine issue of material fact as to whether the employer's reasons are false or "unworthy of credence" and, thus, merely a pretext for discrimination. *Id.* Spears retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment action. *Id.*

## (A)     ITLO 3 position:

As discussed above, in October 2008, Spears applied for the ITLO 3 position. As an African American female, she is a member of a protected class. *Stone v. Parish of East Baton Rouge*, 2009 WL 2169122 (5th Cir. 2009). Additionally, since the ITLO 3 position was a probationary one open to applicants at all levels (ITLO 1-4), she was qualified for the position. Furthermore, since Spears was denied the position, she was subjected to an adverse employment action. Thus, it is undisputed that the first three (3) elements of her *prima facie* case are satisfied with respect to the ITLO 3 position denial. Nevertheless, the undersigned agrees with LCLE that plaintiff has not satisfied the fourth element of her *prima facie* case by establishing that others outside the protected class were treated more favorably than her under nearly identical circumstances. As discussed above, the candidate that was hired for the ITLO 3 position was Sherro Haynes ("Haynes"), an African American female, who is in both plaintiff's protected race and gender class. Since Spears

9

has not demonstrated that someone outside her protected classes was treated more favorably than she was, she has failed to establish her prima facie case of discrimination with respect to the ITLO 3 position.

Furthermore, even assuming Spears satisfied her *prima facie* case concerning that position, LCLE has nevertheless articulated a legitimate, non-discriminatory reason for hiring Haynes instead of Spears – specifically, that Haynes was more qualified for the position than Spears, in that she had a college degree in computer engineering/science, had vast experience with software development and Help Desk abilities, and possessed skills that would enable the LCLE to transition its crime reporting from a PC-related database system to a web-based system. The selection of a more qualified applicant for a position has been specifically recognized as a legitimate and nondiscriminatory reason for preferring one candidate over another. *Sabzevari v. Reliable Life Ins. Co.*, 2008 WL 276307 (5th Cir. 2008), citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Spears has not produced any competent evidence demonstrating that LCLE's articulated reason for hiring Haynes because she is more qualified is pretextual or untrue. She simply argues that the additional qualifications that Haynes possesses that make her more qualified for the ITLO 3 position (*i.e.*, her college degree in computer science and experience in software development) were not required for the job and that Haynes, unlike plaintiff, had no experience with the crime reporting system or the LCLE. Spears also testified that Barbara Garcia ("Garcia"), one of the individuals on the hiring panel, did not concur with the other two (2) panel members in the hiring of Haynes. *See*, Spears' deposition, pp. 146-147. Simply because a college degree and experience in software

development were not part of the minimum requirements for the job does not mean that Spears and Haynes were equally qualified for the position. At least two (2) members of the hiring panel obviously felt that Haynes' degree and experience made her more qualified for the position regardless of whether she had ever worked with a crime reporting system or with the LCLE since such additional qualifications would be particularly valuable to the type of transition the LCLE was trying to make from a PC-based to a web-based format. Furthermore, although Garcia testified, during her deposition, that the hiring of Haynes was not unanimous (*i.e.*, it was a 2-1 panel decision), there is no evidence before the Court that Garcia believed Spears to be more qualified for the ITLO 3 position than Haynes or that the other panel members decided to hire Haynes for any reason other than the fact that she was more qualified and possessed skills that would enable LCLE to make the transition to a web-based format. *See*, LCLE Exhibit "F," Garcia deposition, p. 28 (discussing the fact that the two other panel members liked Haynes because she had experience as a computer programmer).[4] [5] Accordingly, Spears' Title VII claims concerning the ITLO 3 promotion denial should be dismissed.

    **(B)**     **ITLO Supervisor position:**

---

[4] While Spears has stated in a conclusory manner, on page 6 of her opposition, that Garcia believed Spears was more qualified for the ITLO 3 position, she has not cited to any evidentiary support for that assertion. The mere fact that Garcia did not concur in the hiring of Haynes does not mean that she believed Spears was more qualified for the ITLO 3 position.

[5] Plaintiff has also cited to two cases, *Howard v. Roadway Exp., Inc.*, 726 F.2d 1529 (C.A.Ga. 1984) and *Ratcliff v. Governor's Highway Safety Program*, 791 F.2d 394 (5th Cir. 1986), for the proposition that the LCLE hired a female within plaintiff's protected racial class as a pretext to disguise discrimination against the plaintiff. Such cases hold that the hiring of someone within the plaintiff's protected class cannot alone defeat a claim of pretext. However, defendants are correct that those cases are not controlling in this matter because, even though LCLE hired an individual within plaintiff's protected racial class, it nevertheless remains undisputed that such individual was more qualified for the position than plaintiff. Accordingly, there is no genuine issue of material fact as to the legitimacy of LCLE's stated reason for hiring Haynes instead of plaintiff.

LCLE contends that Spears has not established her *prima facie* case of discrimination relative to the ITLO Supervisor position for three (3) reasons. First, Spears did not actually apply for this position, which is a required element of a claim for employment discrimination based upon a failure to promote. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999)(Failure to apply for a disputed promotion will bar a "failure to promote" claim absent a showing that such an application would have been a futile gesture); *Grice v. FMC Techs. Inc.*, 216 Fed. App'x 401, 406 (5th Cir. 2007)(finding no prima facie showing of a "failure to promote" where employee failed to apply for the promotion at issue). Secondly, Spears did not meet the minimum qualifications for the position as set forth by Civil Service and therefore was not eligible for the position, and thirdly, the candidate that was hired for the position, Myles, an African American male, is a member of Spears' protected racial class.

Spears concedes that she never applied for the ITLO Supervisor position; however, she alleges that she did not do so because her supervisor told her that the position was already taken. A similar argument has been asserted in other cases, however, and the Fifth Circuit has nevertheless found that the failure to apply is fatal to a promotion-related discrimination claim unless the plaintiff can show that such an application would have been a "futile gesture." To demonstrate that applying for the position would have been a "futile gesture," the potential applicant must show that he or she "was deterred [from applying] by a known and consistently enforced policy of discrimination." *Claiborne v. Ill. C. R.R.*, 583 F.2d 143, 150 (5th Cir. 1978); *McCullough v. Houston County, Tex.* 297 F. App'x 282, 287 (5th Cir. 2008). Recently, in *Irons v. Aircraft Service Intern., Inc.*, 2010 WL 3278265 (5th Cir. 2010), a plaintiff claiming promotion-related discrimination argued that "he was not given

the opportunity to apply because [his employer] approached who they wanted for the positions and filled them." The Fifth Circuit held that such an allegation, without more, does not suggest "a known and consistently enforced policy of discrimination" in the employer's promotion system, and the plaintiff's failure to apply for the promotion was therefore fatal to his claims. *Id.*, at *5.[6]

Similarly, in the present case, the alleged statement by Spears' supervisor that the ITLO Supervisor position had already been filled, without more, is not sufficient to establish a "known and consistently enforced policy of discrimination," and as a result, Spears' failure to apply for the position precludes her from meeting the required elements of her *prima facie* case. Spears also fails to satisfy her *prima facie* case of race discrimination relative to the ITLO Supervisor position because the individual selected for the position, Myles, is in the same protected racial class as she is.[7]

Additionally, even assuming Spears could satisfy the elements of her *prima facie* case relative to the ITLO Supervisor position, she has not come forward with any competent evidence demonstrating that LCLE's non-discriminatory reason for hiring Myles (*i.e.*, because he is more qualified for the position) is pretextual. She contends, in a conclusory manner in her opposition, that there is a genuine issue of material fact as to whether LCLE hired Myles for the job based on merit or "based on an immediate need to fill the position in order to prevent plaintiff from applying for it." She contends that a jury

---

[6] *See also, Frensley v. North Mississippi Medical Center, Inc.*, 2010 WL 3655860, *6, n. 1 (Plaintiff testified that her supervisor told her that it would "do [her] no good to apply" for the new positions; such statement was not sufficient to show a "known and consistently enforced policy of discrimination").

[7] Because Spears has failed to satisfy two (2) of the required elements of her prima facie case relative to the ITLO Supervisor position, the undersigned need not address her argument that she did not have to prove that she was qualified for such position because she requested that she be "detailed" for it.

should assess why her supervisor told her the position had been filled "while Mr. Myles did not know about it." However, there appears to be a rational explanation as to why Spears' supervisor told her that the position had already been filled. Interviews relative to the position had already been conducted, and the top two (2) candidates for the position had been selected, with Myles being the "top-rated choice." Even if it is true that Myles had not technically received his job offer at the time that Spears asked about applying for the position, there is no evidence before the Court to suggest that Myles was selected on any basis other than his qualifications and experience or that he was selected merely to prevent Spears from applying for the job. The memorandum drafted by the hiring panel for the ITLO Supervisor position, four (4) days before Spears inquired about the position, explicitly indicates that six (6) applicants were interviewed for the ITLO Supervisor position, that all interviews were handled in the same manner, and that the process resulted in the unanimous decision that Myles was the "top-rated choice" for the position because of "the quality of experience [the panel was] looking for and [his] additional experience (programmer, software development, network troubleshooting) that will be very helpful to the LCLE." *See*, LCLE Exhibit "C(4)." Because Spears has not demonstrated that such reasons for hiring Myles are unworthy of credence, her discrimination claim relating to ITLO Supervisor position should also be dismissed.

**(C)     Criminal Justice Policy Planner position:**

LCLE does not dispute that Spears can satisfy her *prima facie* case concerning the Criminal Justice Policy Planner position for which she applied in May 2009. However, LCLE contends that it has articulated a legitimate, non-discriminatory reason for its decision to hire Murrell, a white male, in that he was more qualified because of his college degree

and his "extensive experience in and with military and local law enforcement which were useful in the position [of] a liaison to all State Law Enforcement." *See*, LCLE's Exhibit "H," Affidavit of Jessi Rebekah Taylor*,* ¶¶5-6.

In an effort at proving LCLE's non-discriminatory reason to be pretextual, Spears simply critiques Murrell's experience and contends, without supplying any competent evidentiary support, that her qualifications and experience would have been "more valuable" to the Criminal Justice Policy Planner position than that of Murrell. Specifically, Spears argues that "the most contact [Murrell] had with other law enforcement agencies was as a patrol officer" and that is "hardly the kind of job where one would obtain extensive liaison experience or create a great rapport with other agencies." She contends that her previous experience in the Uniform Crime Reporting system enabled her to establish a better rapport with all enforcement agencies since, in connection with her LCLE job, she "routinely contacted and communicated with law enforcement agencies." However, she supports such assertions only with her own self-serving deposition testimony, which is insufficient to carry her burden of proof on the issue of qualifications. A plaintiff's subjective belief that she is more qualified than another candidate for a position is simply insufficient to create a genuinely disputed issue of fact for trial. *Hobbs v. City of Chicago*, 2007 WL 1810511, *5 (N.D.Ill. 2007), citing *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996)(stating that "[i]t is well settled . . . that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions"); *Caro v. Principi*, 2002 WL 31654939, *7 (N.D.Ill. 2002); *Nicols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir.

1996).  As such, Spears' Title VII claim relating to the Criminal Justice Policy Planner position likewise should be dismissed.

## III.    Section 1981 discrimination claims:

Section 1981 entitles all persons within the jurisdiction of the United States with the same rights to enter in and enforce contracts as those "enjoyed by white citizens."  42 U.S.C. §1981.  The elements of an employment discrimination claim asserted under Section 1981 are identical to those for a discrimination claim brought pursuant to Title VII. *Taylor v. Seton Brackenridge Hosp.*, 2009 WL 3150256, **2 (5th Cir. 2009), citing *Glanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1233 (5th Cir. 1989).  Thus, employment discrimination claims brought pursuant to Section 1981 are analyzed under the same evidentiary framework as Title VII claims.  *Id.*, citing *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).[8]  Because the undersigned has determined that Spears cannot carry her burden of proof relative to her Title VII discrimination claims discussed above, her Section 1981 claims should likewise be dismissed.

## IV.    Pay discrimination under the Equal Pay Act:

As discussed above, Spears contends that she has been subjected to pay discrimination because a similarly situated white male employee, Taylor, is paid on a higher pay scale for performing the same duties.  To establish a *prima facie* case of disparate pay under the Equal Pay Act, Spears must show that:  (1) she is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar

---

[8] Section 1981 itself does not provide an avenue for suit against a local government entity.  The proper and exclusive means by which a plaintiff may bring an action against a local government entity for an alleged Section 1981 violation is to bring a claim pursuant to Section 1983, as Spears has done.  *Oden v. Okitebebbeha County, Miss.*, 246 F.3d 458, 462-63 (5th Cir. 2001).  However, for the reasons stated above, Spears' Section 1981 claim fails for the same reasons that her Section 1983 and Title VII claims fail.

16

working conditions; and (2) she was *paid less* than an employee of the opposite sex providing the basis for the comparison. *Wiley v. American Elec. Power Service*, 2008 WL 2787441 (5th Cir. 2008)(Emphasis added), citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). LCLE does not dispute that Spears has satisfied the first two elements of her prima facie case; however, it contends that she cannot satisfy the third element because she cannot produce any evidence that Taylor has been paid a higher salary than she has because she has specifically admitted that she is unaware of Taylor's salary. Furthermore, LCLE has presented evidence that, over the past five (5) years, Spears has, in fact, received a higher salary than Taylor, and as a result, she cannot establish her prima facie case that she has been discriminated against in terms of pay on the basis of her gender.

The undersigned agrees. Even if Taylor's position as a Criminal Justice Policy Planner 3 is paid on a higher pay scale, Spears has no viable claim against LCLE under the Equal Pay Act because she has not established that she has ever actually been "paid less" than him.[9] *Bertotti v. Philbeck, Inc.*, 827 F.Supp. 1005 (S.D.Ga. 1993)(Plaintiff failed to establish prima facie violation of Equal Pay Act absent showing that the pay she actually received during the two pay periods that she was employed was less than pay actually received during those periods by either of two "comparators"); *True v. New York State*

_____

[9] The Equal Pay Act, 29 U.S.C. §206(d)(1), provides in pertinent part:

> "No employer *** shall discriminate *** between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work ***."

29 U.S.C. §206(d). Thus, a required element of a cause of action under that Act is that the employer actually pay disparate wages to employees of the opposite sex. Since Spears has not demonstrated that her opposite-sex comparator, Taylor, has ever actually received higher wages than she has, she does not have an actionable claim under the Act regardless of whether his position is paid on a higher pay scale.

*Dept. Of Correctional Services*, 613 F.Supp. 27 (D.C.N.Y. 1984)(granting summary judgment as to Equal Pay Act claim because plaintiff neither contended nor alleged that she was actually paid at a lower rate than male employees); *McEwen v. MGM Grand Detroit*, 2006 WL 83476 (E.D.Mich. 2006)(Plaintiff's claims of wage discrimination fail because there is no dispute that he was never paid less than his comparator. The plaintiff had not cited any authority for the proposition that a wage discrimination plaintiff can establish a prima facie case without showing that he was paid less than the allegedly comparable employee at all times). Accordingly, Spears' Equal Pay Act claim should be dismissed.

## V. Retaliation:

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. §2000e-3(a). To establish a claim of retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Thomas v. Atmos Energy Corp.*, 2007 WL 866709, **5 (5th Cir. 2007), citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003).

LCLE does not dispute that Spears has participated in activities protected by Title VII in filing EEOC complaints and this lawsuit, and it also concedes that the failure to promote her constitutes an adverse employment action for purposes of Title VII. As such,

it is undisputed that the first two (2) elements of Spears' *prima facie* case of retaliation are satisfied. Spears may establish the third causal link element of her *prima face* case in two (2) ways: either by presenting direct evidence of retaliatory motive on the part of LCLE, or by providing circumstantial evidence that creates a rebuttable presumption of retaliatory motive. *Fabela*, at 414-15. By producing direct evidence, the plaintiff avoids the *McDonnell Douglas* framework and shifts the burden of persuasion to the employer. *Thomas*, at **7, citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

Spears contends that she has produced direct evidence of a retaliatory motive on the part of LCLE in this case. Specifically, she relies upon certain alleged statements and threats made by her supervisor, Dunn, in February 2009, two (2) months after Spears amended her original EEOC complaint and one (1) month before Spears contends she was denied the opportunity to apply for the ITLO Supervisor position based upon Dupuy's statement that the position had already been filled. As discussed above, Spears testified, during her deposition, that Dunn told her to stop writing her EEOC complaints because the LCLE would begin to look at it as a form of retaliation against them, that the LCLE would use it to build a case against Spears, and that they would consider it a use of the agency's resources and fire her. Spears also contends that Dunn told her to quit "while she is ahead." *See*, Spears' deposition, pp. 81-83. Spears further asserts that Ms. Dunn told her that LCLE was immune from complaints because of its connections with investigative and judicial bodies and threatened to set plaintiff's son up on charges. *Id.*, pp. 83-84; Plaintiff's Exhibit # 6.

The Fifth Circuit has defined "direct evidence" as evidence which, "if believed, proves the fact without inference or presumption," and has held that, in a Title VII case,

direct evidence of a retaliatory motive includes "any statement or document which shows on its face that an improper criterion was a basis for the adverse employment action." *Thomas*, at \*\*7, quoting *Brown*, at 861 and *Fabela*, at 415. The evidence produced by Spears does not satisfy that standard. While Dunn's statements to Spears certainly suggest that she resented Spears for filing her EEOC complaints, they do not, on their face, demonstrate that the LCLE's subsequent actions in not promoting Spears to the ITLO Supervisor position and the Criminal Justice Policy Planner position were motivated by that resentment.[10] Put another way, the undersigned does not find that Dunn's alleged statements, on their face, establish as fact, without inference or presumption, that Spears was subsequently denied promotions as a result of the filing of her EEOC complaints. Accordingly, Spears has not satisfied her prima facie case of retaliation via direct evidence of retaliatory motive.

The undersigned must therefore examine whether Spears' circumstantial evidence demonstrates a retaliatory motive. Where a plaintiff provides only circumstantial evidence of causation, the *McDonnell Douglas* burden-shifting framework applies. *Thomas*, at \*\*7, citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). Thus, if the employee makes a prima facie case of retaliation, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Id.*, citing *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754-55 (5th Cir. 2005). If the defendant meets that burden, the presumption of discrimination created by the prima facie case

---

[10] *Id.* (where the plaintiff produced evidence that his supervisor complained that the plaintiff's EEOC complaint had brought him under tremendous pressure and declared "if something like this ever comes up again, I will drag you through the mud," the Fifth Circuit determined that such evidence did not, on its face, establish that the supervisor's subsequent actions were motivated by resentment with the EEOC complaint).

disappears, and the plaintiff is left with the ultimate burden of proving that the protected activity was the but-for cause of the adverse employment action. *Id.*, citing *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001).

As circumstantial evidence of a retaliatory motive, Spears relies upon the temporal proximity between her protected activity and LCLE's denials of the various promotions. For example, she argues that she filed her first complaint with the EEOC in August 2008 and was denied a promotion to ITLO 3 position two (2) months later, in October 2008. She also points out that she amended her EEOC complaint to add a charge of retaliation in November 2008, about which LCLE was notified in January 2009, and a month later, in February 2009, her supervisor, Dunn, made the various comments and threats discussed above. Then, a month after that, in March 2009, Spears contends she was denied the opportunity to apply for the ITLO Supervisor position based upon Dupuy's statement that the position had already been filled. Finally, she asserts that she was denied the Criminal Justice Policy Planner position two (2) months later in May 2009.

The Fifth Circuit has held that evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action is sufficient to allow an inference of causation for summary judgment purposes where up to four (4) months have elapsed between the protected activity and the employer's action. *Thomas*, at **8, citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001).[11] Because two (2) months or less was the amount of time that lapsed

---

[11] In *Handzlik v. U.S.*, 2004 WL 315042, **3 (5th Cir. 2004), the Fifth Circuit specifically held that a time period of "just over two months" between the start of EEOC complaints and a plaintiff's non-selection for an open position is sufficient to establish the requisite causal link of a plaintiff's prima facie case of retaliation. The Fifth Circuit explained that, at the summary judgment stage, all inferences from the record must be drawn in the light most favorable to the plaintiff/non-movant, and a "minimal showing" is all that is necessary to establish a prima facie case.

between each of Spears' EEOC complaints/amendments and the promotion decisions of LCLE and it is undisputed that her supervisor, Dunn (who was one of the decisionmakers concerning the promotions for which Spears applied), was aware of those EEOC complaints/amendments at the time the promotion decisions were made, the undersigned finds that such temporal proximity is sufficient to establish the causation element of Spears' *prima facie* case of retaliation.

Since Spears has established a *prima facie* case of retaliation through temporal proximity, the burden shifts to LCLE to state a legitimate, non-discriminatory reason for denying Spears the promotions for which she applied. This LCLE has done so. Specifically, LCLE has stated that those positions were awarded to other candidates because they had "objectively superior qualifications and experience" to that of Spears. LCLE has supported that reason with competent summary judgment evidence indicating that the candidates who were selected both had college degrees and skills and experience that Spears did not possess, which made them more qualified for the positions in question.

Thus, the final issue with respect to Spears' retaliation claim is whether she has produced evidence demonstrating that LCLE's legitimate, non-discriminatory reason for its decisions is pretextual or untrue. There are two (2) routes by which a plaintiff may demonstrate a material issue of fact at this final stage of the analysis. First, Spears may succeed by presenting evidence that the employer's proffered explanation is "unworthy of credence" because it has "no basis in fact." *Burdine*, 450 U.S. at 256; *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002). Secondly, she may succeed "directly by

---

Given those underlying principles and the summary judgment evidence in the record, the Fifth Circuit found that the plaintiff had proffered sufficient evidence to establish the causation element of her prima facie case where there was a two-month time lapse between the protected activity and the employer's decision. *Id.*

persuading the court that a [prohibited] reason more likely motivated the employer."
*Burdine*, at 256. Both of those routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action. *Heaton v. Weitz Co., Inc.*, 2006 WL 3321328 (N.D. Iowa 2006). Spears has not produced sufficient evidence fulfilling either of those two routes. Specifically, she has not produced any evidence refuting the evidence submitted by LCLE indicating that the candidates selected for the positions in question were, in fact, more qualified and skilled than she is (*i.e.*, she has not produced any evidence that LCLE's articulated reason for its promotion decisions has no basis in fact).[12] Furthermore, Spears has not produced any evidence demonstrating that the superior skills and qualifications of the candidates who were hired were not the true motivation for LCLE's decisions and that, instead, the true motivation (or even a motivating factor) was to retaliate against Spears for filing EEOC complaints. As such, Spears has failed to demonstrate that LCLE's basis for denying her the promotions in question is pretextual, and considering the Fifth Circuit's position on not second-guessing the business decisions of an employer so long as those decisions are not the result of proven discrimination or retaliation,[13] the undersigned finds that Spears' retaliation claim should be dismissed.

## VI.    Hostile work environment claim:

---

[12] She also has not produced any competent evidence indicating that, despite her inferior education and experience, she could be considered equally "qualified" for the positions in question through "detailing" or training, or that "detailing" or training was even available to qualify her for the positions in question. Moreover, even if "detailing" was available for the positions, LCLE still could have made a business decision that it was more efficient and cost-effective just to hire an individual who already possessed superior education and experience qualifying them for the positions than to have to "detail" a less qualified individual into the position.

[13] *Jackson v. Watkins*, 619 F.3d 463 (5th Cir. 2010), citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997).

In order to establish a hostile work environment claim, Spears must demonstrate that: "(1) she is [a] member of a protected group; (2) she was the victim of uninvited [ ] harassment; (3) the harassment was based upon [her protected group, *i.e.*, race, gender]; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *May v. Fedex Freight East, Inc.*, 2010 WL 1141653, **1-**2, quoting *Harvill v. Westward Commc'n, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).

For harassment "to affect a term, condition, or privilege of employment . . . it must be sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Parker v. State of Louisiana Dept. Of Educ. Special School Dist.*, 2009 WL 1096436 (5th Cir. 2009), quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and the subjective perception must be objectively reasonable." *Id.*, at **3, quoting *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). The determination of whether a hostile work environment exists is made using a "totality-of-the-circumstances test that focuses on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Id.*, quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

It is undisputed that Spears is a member of a protected class in that she is an African American female; however, LCLE disputes that the alleged conduct which forms the basis of her complaint rises to the level of a hostile work environment as a matter of law. LCLE has referred to several excerpts from Spears' deposition, wherein she

discussed the conduct that she considers to constitute a hostile work environment. Spears has not even addressed her hostile work environment claim (or presented any evidence related thereto) in her opposition memorandum, and as a result, the undersigned finds that the conduct cited to by LCLE is therefore the only conduct to be considered in connection with this claim. The first conduct to be considered is that of LCLE's attorney, Mark Falcon ("Falcon"). On page 131 of her deposition, Spears testified that Falcon's presence at a meeting in May 2009 concerning the incident where she reported a hate crime to the FBI was intimidating to her. She also testified that Dupuy created a hostile work environment by allowing Dunn and Mehrtens to "do and say the things that they did." *See*, Spears' deposition, p. 131. Finally, Spears apparently testified that Mehrtens has created a hostile work environment by not speaking to her, glaring at her, not moving out of the way when walking down the hall, and by changing his demeanor and attitude toward her.[14]

The undersigned finds that the above conduct is not sufficient to sustain Spears' claim of a hostile work environment under applicable legal standards. Relative to her claim of intimidation by Falcon, such claim can be easily disposed of since he is not an employee of LCLE and is not a named defendant in this matter. Even assuming Spears had presented sufficient evidence of harassment by Falcon, she cannot hold LCLE responsible for such conduct. As to Dupuy, Spears has not presented any evidence regarding specific harassing conduct on Dupuy's part for which LCLE could be held responsible. Additionally, the Fifth Circuit has found that conduct that is even more severe than the alleged conduct

---

[14] Although LCLE refers to page 130 of Spears' deposition as support for such contentions, neither LCLE nor Spears actually submitted those pages of Spears' deposition to the Court for review. Nevertheless, since Spears has not disputed LCLE's assertion that those are the acts of Mehrtens that she considers to constitute a hostile work environment, there is no basis for questioning that page 130 of her deposition indeed states such contentions.

of Mehrtens is insufficient to establish a hostile work environment claim.  For example, in *Barnett v. Boeing Co.*, 2009 WL 101932 (5th Cir. 2009), the Fifth Circuit held that an employee failed to establish that the harassment she suffered was sufficiently severe or pervasive to alter the conditions of her employment, as required to make out a prima facie case of a hostile work environment under Title VII, despite evidence that a coworker leered at the employee, touched her in sexually inappropriate and unwelcome ways, and actively intimidated her after she complained of his actions.  The court held that the coworker's alleged actions in remaining near the employee's building after his suspension, making excuses to come near her work space and glare at her, and intimidating her did not destroy her ability to succeed in the workplace environment.

Similarly, in the present case, even if Mehrtens' alleged changed demeanor and actions toward Spears may have resulted in an uncomfortable workplace environment, there is no competent evidence before the Court to suggest that his actions destroyed her ability to succeed in the workplace environment.[15]  In fact, Spears actually testified during her deposition that she "love[s] [her] job" and the people that she works with "in the field" and "within [her] agency."  *See*, Spears' deposition, p. 115.  It cannot be said that a work environment is subjectively hostile or abusive to an employee when that employee indicates that she loves working in that environment and, in fact, did not want to be moved out of that post for a promotion.  *Id.*  Finally, although LCLE has not referenced the threats and comments made by Dunn, which are discussed above, as conduct that Spears might

---

[15] *Barnett*, at **5 ("While this Court does not doubt that this was an uncomfortable workplace environment, Barnett fails to establish that the actions destroyed her ability to succeed in the workplace environment," and the actions therefore do not rise to the level of severe or pervasive conduct required to satisfy element (4) of the prima facie case of a hostile work environment claim).

contend created a hostile work environment, the undersigned also finds that Dunn's conduct is not of the type or the severity necessary to create a hostile workplace. The alleged behavior of Dunn was neither physically threatening nor humiliating to Spears, and there is no evidence that it interfered with Spears' work performance. As such, no reasonable person could find that the conduct alleged by Spears created a workplace "permeated with 'discriminatory intimidation, ridicule, and insult'."[16] Accordingly, Spears has failed to show that she suffered from an objectively hostile or abusive work environment, and this final claim should also be dismissed.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion for Summary Judgment (R. Doc. 17) filed by the defendant, State of Louisiana, Commission on Law Enforcement and Administration of Criminal Justice, should be **GRANTED**, that the claims of plaintiff, Joyce Spears, should be **DISMISSED WITH PREJUDICE**, and that judgment should be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, January 20, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[16] *See, Stephens v. Gutierrez*, 2010 WL 1005189 (E.D.Va. 2010)(Plaintiff claimed that the following actions amounted to a hostile work environment, but the court disagreed: (1) not being contacted directly by his supervisors for a period of time; (2) not being assigned job-related travel; (3) not being given new work assignments; (4) being denied a certain amount of official "EEO time" in which to complete EEO activities and threatened with being placed on absent without leave status for any additional amount of EEO time taken; and (5) not being noticed of any performance deficiencies); *Chaple v. Johnson*, 453 F.Supp.2d 63 (D.D.C. 2006)(holding that a plaintiff being removed from a leadership position of a workgroup and demeaning comments about the plaintiff's EEO activity did not "demonstrate the type of extreme behavior that the Supreme Court requires to make out a prima facie case of hostile work environment discrimination").